UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**BENJAMIN K. SCOTT,**                                                                                   **PLAINTIFF**

v.                                                                                                 No. 5:21-cv-125-BJB

**MARQUETTE TRANSPORTATION**                                                            **DEFENDANTS**
**COMPANY, LLC AND HEALTHWORKS**
**MEDICAL, LLC,**

\* \* \* \* \*

### ORDER OF DISMISSAL

Federal Rule of Civil Procedure 41(b) authorizes district courts to grant a motion to dismiss a lawsuit if a plaintiff violates a court order or fails to prosecute the case. *See Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 629–31 (1962)). Although federal courts afford *pro se* litigants leniency on matters that require legal sophistication, such as formal pleading rules, the same approach does not necessarily apply to court deadlines and other procedures readily understood by laypersons. *Id.* at 110. As the Court of Appeals has explained, "the lenient treatment of *pro se* litigants has limits. Where, for example, a *pro se* litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan*, 951 F.2d at 110). This is particularly true when the plaintiff simply fails to pursue the case at all. *Jourdan*, 951 F.2d at 110.

This case, filed by *pro se* plaintiff Benjamin Scott, falls into that category, as described in the Defendants' motion to dismiss. *See* DN 52. Because Scott has failed to comply with numerous court orders, deadlines, and warnings, dismissal for failure to prosecute is appropriate here. *See Wabash*, 370 U.S. at 630.

Scott filed this lawsuit in September 2021 against Marquette Transportation Company and HealthWorks Medical. Complaint (DN 1). Scott mailed the complaint to both Defendants in January 2022. *See* DN 9. Despite not being properly served, Marquette answered the following month. DN 14. Scott and Marquette participated in several telephonic status conferences with Judge Russell, who previously presided over this case. *See* DNs 19, 21, 25. In one of these conferences, Judge Russell gave Scott until July 2022 to properly serve HealthWorks. DN 21. Scott still has not served HealthWorks, though it has participated in the case by opposing Scott's motion to amend and filing two motions to dismiss. *See* DNs 39, 42, 52.

The Chief Judge reassigned this case after Judge Russell retired in October 2022. DN 26. Since then, Magistrate Judge King held a telephonic status conference

1

that Scott failed to attend. DN 28 (Nov. 7, 2022). In response, Judge King issued a show-cause order requiring Scott to confirm his appearance at a status conference scheduled for December 2022. He also ordered Scott "to file a written pleading … to show cause why the claims against Defendant HealthWorks should not be dismissed for failure to properly affect service." *Id.* Scott attended the December status conference but did not affect proper service on HealthWorks or otherwise respond to the Court's show-cause order. DN 30. Scott also failed to appear for telephonic status conferences in February and April 2020. DNs 31, 32. After each absence, Judge King warned Scott that "failure to appear at future court appearances could result in his being held in contempt of court," "sanction[s]," or "dismissal of [his] claims." DNs 28, 29, 31, 32.

After months of silence, in July 2023 Scott filed two duplicate motions asking the Court "to reconsider any possible rulings that may have been made" and to give him permission to amend his complaint. DNs 34, 35. After soliciting responses from the Defendants, DN 36, Judge King granted Scott's request to amend his complaint. Judge King gave Scott until November 20 to file his amended complaint and to show cause why his claims against HealthWorks shouldn't be dismissed. DN 43. On November 20, Scott sought an extension, DN 48, which Judge King granted until January 8, DN 49. Scott asked for yet another extension on January 11, DN 50, and Judge King gave him until January 29 to comply, DN 51. That order made clear that "[n]o further extensions shall be granted" and that "[f]ailure to comply with this Order may result in dismissal of this action without prejudice for failure to prosecute." *Id.* at 2.

Nevertheless, Scott has not complied with the Court's latest order. On March 1, 2024, the Defendants filed a joint motion to dismiss with prejudice for failure to prosecute. DN 52.

They are right. Scott has undoubtedly failed to prosecute this case. "Although this court prefers that claims be adjudicated on their merits, dismissal is appropriate when a *pro se* litigant has engaged in a clear pattern of delay." *Jourdan*, 951 F.2d at 110. "This measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (quoting *Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir. 1999)). Trial judges therefore receive "substantial discretion" in exercising this authority in service of these broader goals of case management and judicial stewardship. *Id.* To be sure, "dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Id.* But that harsh sanction may be appropriate, even with respect to dismissal with prejudice, under certain circumstances. *Id.* at 740, 742 (affirming dismissal of two plaintiffs' claims with prejudice).

To determine whether dismissal is appropriate—either with or without prejudice—courts in this circuit consider (1) the plaintiff's "willfulness, bad faith, or fault" in causing the delay, (2) any prejudice the plaintiff has caused the defendants,

(3) whether the court warned the plaintiff "that failure to cooperate could lead to dismissal," and (4) "whether less drastic sanctions were imposed or considered before dismissal was ordered." *Id.* at 737. "Although typically none of the factors is outcome dispositive," a trial judge may "properly dismis[s]" a case if a "clear record of delay or contumacious conduct" exists. *Knoll*, 176 F.3d at 363 (affirming dismissal without prejudice).

Scott's conduct in this case justifies dismissal with prejudice. His persistent failures to comply with this Court's orders and deadlines show "willfulness and fault." The facts resemble those that warranted dismissal in *Schafer*: that plaintiff failed to refile a complaint for more than six months, asked for an extension two months after the deadline had passed, and made no apparent attempts to comply with the deadlines. 529 F.3d at 739. As to Scott, the Court has either warned or reminded him multiple times regarding his need to refile and the potential for dismissal if he didn't. In one extension request, Scott noted that he's had "some difficulty in responding to Defendants and keeping up with this case due to [his] work schedule, home and family life," and multiple health concerns that affect his ability to understand and prepare legal filings. DN 48. And his last filing complained that the Court had not "appear[ed] to consider the maladies" that have made it difficult to respond in a timely manner and had held him "to the same standard as a group of lawyers who have paid paralegals and/or legal secretaries to write pleadings." DN 50.

But the record demonstrates the opposite. The Magistrate Judge has afforded Scott a tremendous amount of leeway in this case—far more than would typically be afforded lawyers practicing with or without the support of staff. Nearly a year has passed since Scott first asked to amend his complaint. After multiple extensions and warnings, however, he has yet to file an amended complaint, serve HealthWorks, or respond to the Court's order to show cause. It's unclear what if anything else the Court may do other than continue to wait on Scott to clear unspecified hurdles to filing.

Importantly, the consequences of that delay and uncertainty affect more than just the Court. The two Defendants have borne the burden of "wasted time, money, and effort" litigating a case that Scott has largely neglected. *Schafer*, 529 F.3d at 737. Marquette and HealthWorks have had to retain and presumably pay lawyers to attend status conferences Scott didn't attend, DNs 31, 32, respond to Scott's requests for extensions, DNs 38, 39, and submit two rounds of motion-to-dismiss briefing, DNs 41, 42, 52. Given the lack of any effect from repeated warnings that Scott could be held in contempt of court or might see his claims dismissed, few options remain besides further indefinite delay. Nor would a lesser sanction be appropriate; the Defendants and Court lack any indication that a subsequent complaint, filed post-dismissal, would jolt Scott into a new rhythm. *See Schafer*, 529 F.3d at 738 ("no alternative sanction would protect the integrity of the pretrial process") (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 644 (6th Cir. 2005)). Because Scott is and has been

3

on clear notice of the potential consequences of persistent inaction, no reason is apparent why Scott should avoid that result now.

The Court therefore grants the Defendants' motion to dismiss (DN 52), dismisses the case with prejudice for failure to prosecute, and denies as moot the Defendants' previously filed motions to dismiss (DNs 41, 42).

Benjamin Beaton, District Judge
United States District Court

May 21, 2024